NATIONAL BANK OF RUTLAND *v.* S. F. PAIGE'S EXECUTOR.

*Corporation, Liability of Director.*

1. The giving of *new notes* for *old ones* is not an *increase of indebtedness* in such a sense as to render the directors of a company liable in an action based upon such new notes, under the act of incorporation, whereby they are made liable, if they *assent* to the contracting of debts *exceeding three fourths* of the capital paid in.
2. And this is so, although the indebtedness exceeds the limit prescribed by the statute.

THIS case was tried at the March Term, 1879. Plea, general issue ; trial by the court ; judgment for the defendant ; DUNTON, J., presiding.

Appeal from Probate Court. The plaintiff by its declaration, claimed to recover against the estate of S. F. Paige upon three

promissory notes, copies of which are here given, marked A, B and C.

The facts are as follows :

The Rutland Manufacturing Company is a corporation organized under No. 139 of the acts of 1864, which is the charter of the company. The company commenced doing business in 1866. The capital stock of the company actually paid in, was, and is, $41,875. The indebtedness of the company between 1866 and October, 1876, when it stopped doing business, and made an assignment for the benefit of its creditors, was, in 1866, $33,624.97 ; 1867, $37,796.61 ; 1868, $30,552.90 ; 1869, $35,469.03 ; 1870, $33,646.50 ; 1871, $35,357.37 ; 1872, $36.602.01 ; 1873, $47,416.20 ; 1874, $39,586.68 ; 1875, $46,415.43 ; 1876, $45,486.32. S. F. Paige was elected a director of said company August 4, 1874, and was re-elected a director each year, and continued to be a director until the company made said assignment. He was also president of said company for one year from August 5, 1875. He was present at the annual meetings of said company, in August, in 1874, 1875 and 1876, when statements of its financial condition, showing the indebtedness on each occasion, were presented and discussed. He died on the      day of      A. D.
It did not appear how the indebtedness of said company accrued ; whether by bad debts caused by the failure of parties to whom they sold their goods, by borrowing money or otherwise. The business was the manufacture of chairs, chair stock, furniture, etc. The plaintiff is the holder of said three notes on which it claims to recover under the provisions of section three of said act, and introduced them in evidence.

There was no evidence in the case showing affirmatively that said S. F. Paige expressly assented to the contraction of any of said indebtedness, or knew when, or for what, the original indebtedness, to pay which said notes were given in renewal, was contracted ; or that he expressly dissented therefrom, except that as president of the company he approved over his signature the said note marked " C," which was thereupon discounted by the plaintiff for $225 ; and the proceeds of such discount were taken by said bank to renew or pay other indebtedness of said company to

that amount; but how far back this indebtedness accrued, whether or not, before Paige became a director did not appear; but it did appear that it was before he became president. The Rutland Manufacturing Company was largely indebted to said bank from the time it commenced business till it made the assignment, which indebtedness was more or less kept along by renewals, and was shown in said statements presented at said annual meetings. The notes marked " A " and " B " were discounted by the plaintiff bank, and were given to renew other notes owed by the company. It did not affirmatively appear that the said Paige expressly assented to the contraction of the original indebtedness for which the notes were given, or that he expressly dissented therefrom. The directors appointed from year to year some person to act in the place of the president in his absence. The business of the company was principally managed by two of its officers, G. C. Ruggles and O. L. Robbins, who were permitted by the other directors to carry on the company's affairs as they saw fit.

" A."

$179.50.                        RUTLAND, VT., August 7, 1876.

Four months from date we promise to pay to the order of H. W. Nye, at the National Bank of Rutland, one hundred seventy-nine dollars and fifty cents, value received.

(Signed.)                RUTLAND MANF'G. CO.

No. 10,135.                        By G. C. RUGGLES, *Treasurer.*

Due December 7-10.

Indorsed by H. W. Nye and G. C. Ruggles.

*Approved, GEO. H. PALMER, V.Pres. (Signed.)*

" B."

$500.                        RUTLAND, VT., July 19, 1876.

Four months from date we promise to pay to the order of G. C. Ruggles and L. Atwood, at the National Bank of Rutland, five hundred dollars, value received.

(Signed.)                RUTLAND MANF'G. CO.

No. 9,776.                        By G. C. RUGGLES, *Treasurer.*

Due November 19-22.

Indorsed by G. C. Ruggles and Loring Atwood.

*Approved, GEO. H. PALMER, V.Pres. (Signed.)*

National Bank *v.* Paige's Executor.

## " C."

Approved, S. F. PAIGE, *Pres.*

$350.                                  RUTLAND, VT., April 25, 1876.
Four months from date we promise to pay to the order of L.
Atwood, at the National Bank of Rutland, three hundred and fifty
dolars, value received.
                    (Signed.)          RUTLAND MANF'G. CO.
No. 9,178.                             By G. C. RUGGLES, *Treasurer.*
Due August 25-28.
Indorsed by Loring Atwood and G. C. Ruggles.
Discounted for two hundred and twenty-five dollars.

*Prout & Walker,* for the plaintiff.

The case is this : Mr. Paige was elected a director of the Rut-
land Manufacturing Company in August, 1874, and was re-elected
to that office from year to year, until October, 1876, when the
company failed. He accepted the appointment, and acted in this
capacity during all this time. The capital stock of the corpora-
tion, actually paid in, was 41,875. The charter of the company
provided that no part of the capital should be withdrawn; that
the company should not contract debts at any time to an amount
greater than three fourths of its capital; and that any director,
assenting to the contracting of debts to a greater amount, should
be personally liable for such excess, to the creditors of the com-
pany. Acts 1864, No. 139. The plaintiff is a creditor. From
1866 to 1876, inclusive, the company's debts exceeded this limit,
and the notes made on exhibit were all given in 1876, when the
debts of the company amounted to $3,611.32 more than its capi-
tal. 1 Potter's Laws of Corp. 400, s. 318; *Weeks* v. *Love,* 50
N. Y. 568 & 314. From these facts Paige's assent is to be im-
plied. *Briggs* v. *Georgia,* 10 Vt. 68. A party cannot accept
the trust of a director and avoid its incident liability. In law he
is regarded as assenting to the acts of his associates and subordi-
nate agents unless he speaks—dissents or objects; and this is the
correct construction of the charter. Thompson's Liability of
Stockholders, 53. *Mowry* v. *Indianapolis R. R. Co.,* 4 Bissell,
78, cited, in 2 Abbott's Digest of the Law of Corp. 211, s. 28;
*The United Society of Shakers* v. *Underwood,* 2 Abbott's Dig.
L. of Corp. 92, s. 6. See also 1 Abbott, 287, s. 93; 288, s. 101.

In re *Petition of Trustee, &c.*, 7 Rep. 632; *McCarty* v. *Lavashe*, 6 Rep. 234. There is nothing in the point that the notes in question are renewal notes, as a " note given in renewal is to be regarded as a new contract and a new debt." Thomp. Liability of Stockholders, s. 101.

*John W. Stewart* and *J. B. Phelps*, for defendant.

The statute makes the personal liability of any director conditional upon his *assenting* to the contraction of the indebtedness. The declaration charges that Paige did assent. The burden of proof is upon the plaintiff to show that the company exceeded the limit, and that Paige, while director, *assented* to the contraction of such excess of indebtedness. The company owed the bank an old debt, and Paige assented to the giving of a new note to the bank for that old debt. Approving this note was not assenting to the contracting of a debt; because no debt was then contracted. Paige might have been at this very time opposing the contraction by the company of any new debts. Upon the renewal of a note, the debt is still the same; 1 Daniel on Neg. Inst. s. 205. This is shown by the familiar rule that renewing the note does not discharge the security given for the debt. *Pinney* v. *Kimpton*, 46 Vt. 80; *Seymour* v. *Darrow*, 31 Vt. 122; *McDonald* v. *McDonald*, 16 Vt. 630; *Dunshee* v. *Parmelee*, 19 Vt. 172; *Dana* v. *Binney*, 7 Vt. 493. This statute is a departure from the established rules of law, and is in its nature penal, and should therefore be construed strictly. Ch. J. SHAW, in *Gray* v. *Coffin*, 9 Cush. 199.

The opinion of the court was delivered by

ROYCE, J. The right of recovery in this case is based upon section three, of the act incorporating the Rutland Manufacturing Company, approved October 31, 1864. The notes declared upon were executed by said company at a time when the debts contracted by it were greater in amount than three fourths of the capital actually paid in, and it is claimed that S. F. Paige, who was a director of said company at the time the notes were executed, so assented to their execution that he became personally liable.

Upon the facts found, his liability must depend upon the con-

struction that may be given to said section. It provides that: " No part of the capital stock shall be withdrawn, or in any manner diverted from the legitimate business of the company, nor shall the company at any time contract debts to an amount greater than three fourths of the capital actually paid in; and any director assenting to the contracting of debts to a greater amount shall be personally liable for such excess, to the creditors of the company." The apparent purpose of that section was to prevent any withdrawal or use of the capital of the corporation that might be prejudicial to its creditors, and any increase of the indebtedness of the corporation beyond the limit prescribed. To entitle the plaintiff to recover it must appear that by the giving of the notes declared upon, the indebtedness of the corporation was thereby increased. While it is true that the giving of a new obligation for a previous indebtedness is generally treated as a new contract, and merges the previous contract or obligation, and the new or substituted obligation is the evidence of the indebtedness upon which the remedy must be sought, the original indebtedness is not thereby increased. That remains the same; it is in substance and in fact, the same indebtedness evidenced by a new promise. From the facts found we understand that the giving of the notes upon which a recovery is sought, was in reality the substitution of new promises to pay for old ones; and that the actual indebtedness of the corporation was not thereby increased. It could not have been intended by that section of the act of incorporation to deprive the officers of the corporation of the right to substitute one evidence of an indebtedness for another when they might think it for the interests of the stockholders to do so, and it could be done without prejudice to the creditors.

This view is decisive against the right of recovery. The question whether S. F. Paige so assented to the giving of the notes as to become personally liable, which has been so fully and ably argued, it is not necessary to decide. It is, however, proper to remark that it seems to us that the facts found do not furnish sufficient evidence of such an assent.

The judgment is affirmed, and ordered certified back to the Probate Court.