# F. P. SCHWAB ET AL V. SCHLUMBERGER WELL SURVEYING CORPORATION.

No. A-994. Decided November 27, 1946.
Rehearing overruled December 31, 1946.
(198 S. W., 2d Series, 79.)

*K. C. Barkley, Jesse A. Pardue, Herbert G. Tigner,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that officers of a corporation become personally liable, after the right of a corporation to do business has been forfeited for failure to pay franchise tax, by acting only to extend, renew or keep current the debts of the corporation which existed and were created and incurred prior to such forfeiture. Whitehead v. Bulkley, 37 S. W. (2d) 1112; Real Estate-Land Title & Tr. Co. v. Dildy, 92 S. W. (2d) 318; Ross Amigos Oil Co. v. State, 134 Texas 626, 138 S. W. (2d) 798.

*Elliott A. Johnson* and *Horace C. Wells,* both of Houston, for respondent.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This suit was filed by the respondent, Schlumberger Well Surveying Corporation, against S. K. & C. Company, a corporation, and F. P. Schwab and M. F. Schwab, officers and directors thereof, to recover upon a promissory note in the sum of $618.00, dated January 1, 1941, payable to the order of respondent, signed by S. K. & C. Company, per F. P. Schwab, President, and attested by M. F. Schwab, Secretary, the same being executed by the Schwabs only in their capacities as officers of the corporation.

The corporation's right to do business in Texas had been forfeited by the Secretary of State on July 2, 1940, because of the failure to pay its franchise tax. The indebtedness evidenced by the note originated in 1938 and 1939 when respondent did some well surveying for the corporation. It was in the form of an open account until April 1, 1939, when the corporation executed its first note for the amount due respondent. Thereafter,

six renewal notes were executed by the corporation prior to the forfeiture of its right to do business. Then, after the forfeiture, and while its right to do business was suspended, the seventh renewal note, the one sued upon, was executed for the same indebtedness pursuant to correspondence solely in the name of the corporation. In a letter accompanying the note sent to respondent, the president of the corporation, in his official capacity, stated that some progress had been made by the company in its efforts at refinancing, but that the same had not been completed. He further stated that it "is our intention to keep this note alive until more satisfactory settlement can be made." Thereupon, the sixth renewal note was cancelled and returned to the corporation, as had been the case in the former renewals. There was nothing in the correspondence exchanged between the parties, nor in the seventh renewal note, to indicate the assumption personally of any liability on the part of the Schwabs.

The respondent sought judgment against F. P. Schwab and M. F. Schwab solely by reason of the provisions of Article 7091, V. A. C. S., which, upon the forfeiture of a corporation's right to do business, fixes a personal liability upon the directors and officers thereof for debts of the corporation created or incurred after such forfeiture with the knowledge, consent and approval of such officials.

Respondent recovered judgment against the corporation and both officials in the trial court, but only the Schwabs, who are petitioners here, appealed to the court of civil appeals. The judgment against the corporation was thus not before that court, nor is it before this court. The court of civil appeals affirmed the recovery against petitioners upon the theory that they were personally liable under the statute. 195 S. W. (2d) 412.

■ Although we would ordinarily have no jurisdiction of the application for writ of error by reason of the amount in controversy, we assume jurisdiction because the construction of a statute is involved. Sec. 1, Art. 1821, V. A. C. S.

The material portions of Article 7091 are as follows:

"* * * Each director and officer of any corporation whose right to do business within this State shall be so forfeited shall, as to any and all debts of such corporation which may be created or incurred with his knowledge, approval and consent, within this State, after such forfeiture by any such directors or officers,

and before the revival of the right of such corporation to do business, be deemed and held liable thereon in the same manner and to the same extent as if such directors and officers of such corporation were partners."

■ Many statutes of similar nature have been enacted in various jurisdictions making the directors or other officers of a corporation liable for its debts where they are guilty of official delinquencies, such as failure to file the required annual reports; making false reports; allowing debts to exceed a certain proportion of the capital stock; paying dividends wrongfully; transacting corporate business before the capital stock or a certain proportion thereof has been subscribed for or paid; transferring property of the corporation after it becomes insolvent; or for creating or incurring debts after the forfeiture of the corporation's charter or right to do business. 13 Am. Jur. 999, Sec. 1057; 19 C. J. S. 345, Sec. 910; Fletcher Cyclopedia Corporations, Permanent Edition, Vol. 3, 649, Sec. 1200. Such statutes, though held to be remedial in some instances, are also penal in nature, and it is generally held that they must be strictly construed and cannot be extended beyond the clear import of their language.

■ It will be noted that the statute involved fixes liability upon the directors and officers of a corporation only for debts "created or incurred" after the forfeiture of the corporation's right to do business. The words "created" and "incurred," as used in the statute, have a clear and well defined meaning. The word "create" means "To bring into existence something which did not exist," 10 Words and Phrases, Permanent Edition, 331; Roth v. State, 158 Ind. 242, 63 N. E. 460, 469. The word "incur" is defined in Ashe v. Young, 68 Texas 125, 3 S. W. 454, as "Brought on, occasioned, or caused." In view of these definitions no debt was "created" or "incurred" by the renewal of the note because the obligation theretofore existed. It thus seems obvious that the liability imposed under the statute is only for debts contracted after the forfeiture of the right to do business, and has no application to the renewal of obligations arising prior thereto. Providence Steam-Engine Co. v. Hubbard, 101 U. S. 188, 25 L. Ed. 786; 13 Am. Jur. 1008, Sec. 1071.

In Fletcher Cyclopedia Corporations, Permanent Edition, Vol. 3, p. 738, Sec. 1258, with reference to such statutes, it is said:

"The renewal of a previous note given by the company does not constitute a violation of the statutes because the renewal note is not an indebtedness 'incurred" within the meaning of that term as used in the statutes. Nor is the execution of a renewal note the contracting of a debt."

In support of that proposition are the following cases: Griffin v. Long, 96 Ark. 268, 131 S. W. 672, 35 L. R. A. (N.S.) 855; Ann. Cas. 1912B, 622; Parsons v. Rinard Grain Co., 186 Iowa 1017, 173 N. W. 276; Lewis v. Montgomery, 145 Ill. 30, 33 N. E. 880; Phoenix Third Nat. Bank v. Martin 219 Ky. 579, 293 S. W. 1064; Sullivan v. Sullivan Manufacturing Co. 24 S. C. 341; Murphy v. Penniman 105 Md. 452, 66 Atl. 282, 121 Am. St. 583; Hoyt v. Hasse, 80 Ill. App. 187; City of Los Angeles v. Teed, 44 P. 580; National Bank of Rutland v. Paige, 53 Vt. 452.

■ There is no authority to the contrary in this state. The cases holding the officers of a corporation liable under article 7091 were with respect to transactions arising subsequent to the forfeiture of the corporation's right to do business, and even then they are not liable unless the new indebtedness was incurred with their knowledge, approval and consent. Whitehead v. Buckley, 37 S. W. (2d) 1112; Young v. Terrace Improvement Co., 62 S. W. (2d) 180; Groce-Parrish Co., 81 S. W. (2d) 273; Guerra v. Contreras, 52 S. W. (2d) 295.

In no case that we have been able to find, in this or any other jurisdiction, has an officer of a corporation been held personally liable where, in his official capacity, he merely renewed a pre-existing debt of the corporation. To subject him to such an unjust and unreasonable penalty would contravene that clear import of the statute and transcend the legislative intent. The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation. It was not to punish worthy and diligent officials who by honest efforts attempt to protect and preserve the rights and properties both of the corporation and its creditors. If the indebtedness here involved was valid and subsisting, it was the duty of the officers of the corporation to recognize its validity, and, so far as in their power, to provide for its payment or make proper arrangements for its deferment. This the officers did, indicating their desire to keep the debt "alive" until more satisfactory settlement could be made. Manifestly, under the rule of strict construction, they should not be charged with this statutory lia-

bility merely for recognizing a debt which had theretofore become binding on the corporation.

It is true, as held by the court of civil appeals, that the giving of a new promise for a previous indebtedness is generally treated as a new contract, which merges the previous obligation, and results in the new or substituted agreement becoming the evidence of the indebtedness. Benson v. Phipps, 87 Texas 578, 29 S. W. 1061; McNeill v. Simpson, Tex. Com. App. 39 S. W. (2d) 835.

However, this rule has reference primarily to the evidence of the debt and the remedy for its enforcement. The giving of a new note for a debt evidenced by a former note does not extinguish the original indebtedness unless such is the intention of the parties. Such intention is never presumed. The burden of proving the discharge or novation is therefore upon him who asserts it. In general the renewal merely operates as an extension of time in which to pay the original indebtedness. The debt is not thereby increased. It remains the same; it is in substance and in fact the same indebtedness evidence by a new promise. Chapman v. Crichet, 127 Texas 590, 95 S. W. (2d) 360; Scott v. Atchison, 36 Texas 76, 38 Texas 385; Cooper Grocery Co. v. Strange, Tex. Com. App., 18 S. W. (2d) 609; Rushing v. Citizens' Nat. Bank, 162 S. W. 460, writ refused. Hence, the new agreement made in behalf of the corporation did not create or incur a new debt within the meaning of the statute. It merely created new evidence of the existing indebtedness. National Bank of Rutland v. Paige's, Executor, 53 Vt. 452, 457. Surely the legislature in this enactment did not intend to impose a personal liability which would, in effect, deprive the officers and directors of a corporation of the right to substitute one evidence of an indebtedness for another when in their discretion they might think it for the best interests of the stockholders and creditors to do so. It is our opinion that the holding of the court of civil appeals to the contrary is errneous.

The judgments of trial court and of the court of civil appeals are both reversed and judgment is here rendered that respondent take nothing against petitioners, F. P. Schwab and M. F. Schwab.

Opinion delivered November 27, 1946.

Rehearing overruled December 31, 1946.